UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————
                                           )
                                           )
ROBERT LUE,                                )
                                           )
               Petitioner,                 )        08 Civ. 3834 (DAB) (LMS)
                                           )
      - against -                          )
                                           )        **REPORT AND**
LUIS MARSHALL, *Superintendent,*           )        **RECOMMENDATION**
SING SING CORRECTIONAL FACILITY,           )
                                           )
               Respondent.                 )
———————————————————————————)

TO:   THE HONORABLE DEBORAH A. BATTS,
      UNITED STATES DISTRICT JUDGE

      On March 22, 2008, Petitioner Robert Lue, proceeding pro se, filed the instant petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  See Pet. 11, Docket Entry (herein,

"D.E.") 1.  He challenges his October 14, 2004,[1] state court conviction on his plea of guilty to the

following offenses: three counts of burglary in the second degree; two counts of grand larceny in

the second degree; thirteen counts of grand larceny in the third degree; three counts of criminal

possession of stolen property in the third degree; one count of criminal possession of stolen

property in the fifth degree; one count of criminal mischief in the second degree; one count of

criminal mischief in the fourth degree;[2] five counts of possession of burglar's tools; four counts

———————————————

      [1]In his Petition, Petitioner lists the date of his conviction as October 14, 2005, not 2004.
Pet. 1.  However, it appears that this was merely a typographical error: the transcript of
Petitioner's guilty plea is dated October 14, 2004.  Resp't's Mem. of Law Ex. 7 at 1, D.E. 8.

      [2]Respondent lists this charge as criminal mischief in the third degree, not the fourth, see
Resp't's Aff. in Opp'n 1, D.E. 7, but Petitioner's statement that he was convicted of criminal
mischief in the fourth degree is corroborated by the plea transcript.  See Pet. 1, Resp't's Mem.
Ex. 7 at 64.

1

of conspiracy in the fifth degree; six counts of unauthorized use of a vehicle in the first degree; one count of unauthorized use of a vehicle in the third degree; and two counts of "auto-stripping" in the third degree.  Pet. 1; Resp't's Aff. in Opp'n 1.

This Petition was referred to me by Judge Robinson, to whom the case was originally assigned, pursuant to 28 U.S.C. § 636.  Order of Reference, D.E. 10.  Respondent moves for the Petition to be dismissed as untimely under the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Resp't's Mem. 3 (citing 28 U.S.C. § 2244(d)(1)).  In the alternative, Respondent contends that the Petition should be denied as meritless.  For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the instant petition should be denied.

## I.  BACKGROUND

A.      The Crime

From approximately September 2002 to May 2003, Petitioner led a group of car thieves who stole luxury cars, often from private homes, in Westchester County, New York.  Resp't's Aff. in Opp'n 2.

B.      State Court Proceedings

Petitioner was indicted in Westchester County Court on January 12, 2004, on numerous charges, including those listed above, relating to his car theft scheme.  Resp't's Mem. Ex. 1; Resp't's Aff'n in Opp'n 2.  Petitioner was arraigned on these charges on January 15, 2004, and on January 27, 2004, Petitioner's bail was set at $250,000.  Resp't's Aff. in Opp'n 4.  Respondent affirms that at that setting of bail, Westchester County Court Judge DiBella advised Petitioner of the consequences of failing to appear at future court proceedings, should his bail be posted–the

2

so-called "Parker warnings" required by People v. Parker, 57 N.Y.2d 136 (1982).[3]  Id.  On June

1, 2008, Petitioner was released after posting a $250,000 bond, secured by his mother's house.

Id. at 5.  Respondent affirms that the presiding judge at that proceeding, Judge DiFiore, also

gave Petitioner Parker warnings.  Id.  Respondent also states that on June 22, 2004, Petitioner

appeared at a conference before the judge who was to conduct his impending trial, Judge

Zambelli, who also gave Petitioner Parker warnings, marking the third time Petitioner had been

advised by the Court of the consequences of failing to appear at court proceedings while released

on bail.  Id.

　　Just before his trial was to commence, Petitioner pled guilty to the counts listed above.

Id. at 6; Resp't's Mem. Ex. 7.  As part of his plea, Petitioner waived his right to appeal.  Resp't's

Mem. Ex. 7 at 29: 6 - 12.  Pursuant to a plea agreement, Petitioner was to be sentenced to an

aggregate total sentence of five years' imprisonment.  Id. at 7: 7 - 12.  The Court asked

Petitioner's counsel if he had "explained post-release supervision" to Petitioner, and counsel

responded by stating that "there is a period of post release supervision as well. . ." Id. at 7: 13 -

16.  No further discussion of the terms of post-release supervision took place at the plea hearing.

As part of the plea agreement, Petitioner was released on bail pending sentencing, but the Court

expressly advised Petitioner that "if [Petitioner and his co-defendant] get in trouble, between

now and the date of sentence, and they fail to appear to probation, or they fail to show here, that

they're going to be sentenced in absentia to the maximum in [t]heir absence." Id. at 15: 12 - 17

---

[3]No transcript of this or the two successive court appearances at which Parker warnings
were given has been produced.  Rather, Respondent relies on notes made by the Assistant
District Attorney on the prosecutor's file, which read "Parker," "Parker Warnings Given," and
"Parker Warnings Issued."  Resp't's Mem. Ex. 3 at 2.  The corresponding dates for these
notations cannot be ascertained from the submitted copies.

(emphasis added). This caution was repeated by the ADA as well as by the Court during the allocution:

> ADA: And do you each understand that should you be arrested for committing a new crime before sentencing in this matter, or fail to appear at sentencing, the sentence commitment is no longer binding on the Court? . . .
> THE COURT: . . . if . . . you don't show up here, I will hold you to your plea and I will sentence you to the maximum the law [allows] me to sentence you to."

Resp't's Mem. Ex. 7 at 26: 23 - 27: 12 (emphasis added). The ADA later ascertained that Petitioner understood everything that had been said to him during the plea proceeding, and Petitioner acknowledged that he did understand. Id. at 77: 6 - 11.

On January 18, 2005, despite having received repeated warnings of the consequences of failing to appear at court proceedings while released on bail, Petitioner failed to appear at sentencing, and a bench warrant was issued for his arrest. Resp't's Aff. in Opp'n 10; Resp't's Mem. Ex. 8 at 3: 13 - 15. Judge Zambelli adjourned Petitioner's sentencing to April 26, 2005, but Petitioner again failed to appear at that conference. Resp't's Mem. Ex. 8 at 2: 16- 17. In support of his argument that Petitioner's absence on April 26 was voluntary, the prosecutor described the fruitless efforts undertaken by law enforcement to locate Petitioner since his earlier failure to appear, efforts which included sending eight detectives to search for him out of state, contacting his family, and surveying local hospitals. Id. at 3 - 6. In addition, the prosecutor represented that after Petitioner's earlier failure to appear, his bond was forfeited and a reward was posted for information on Petitioner's whereabouts by the private bail company, which also proved unavailing. Id. at 3. Petitioner's attorney did not dispute the truth of the prosecutor's statements, and could not provide any information to indicate that Petitioner's absence was not voluntary. Id. at 7.

Therefore, the Court concluded that Petitioner had voluntarily absented himself from

sentencing. Id. at 8. Judge Zambelli sentenced Petitioner, in absentia, to the following terms of

imprisonment and supervised release: on each of the three counts of burglary in the second

degree to which Petitioner had pled guilty, Petitioner was sentenced to a fifteen year term of

imprisonment, to be followed by a five year period of supervised release. Id. at 10: 14 - 15; 12:

8 - 9; 13: 3 - 5. The sentences on these three counts were to be served consecutively to each

other but were to run concurrently with the sentences imposed on the other counts. Id. at 14: 1 -

3. Petitioner was sentenced to indeterminate terms of imprisonment of five to fifteen years on

each of the two counts of grand larceny in the second degree; indeterminate terms of

imprisonment of two and one-third to seven years on each of the thirteen counts of grand larceny

in the third degree and on each of the three counts of criminal possession of stolen property in

the third degree; a determinate term of imprisonment of one year on the count of criminal

possession of stolen property in the fifth degree; an indeterminate term of imprisonment of two

and one-third to seven years on the count of criminal mischief in the second degree; determinate

terms of imprisonment of one year each on the count of criminal mischief in the fourth degree,

the five counts of possession of burglar's tools, and the four counts of conspiracy in the fifth

degree; determinate terms of imprisonment of two and one-third to seven years on each of the

six counts of unauthorized use of a vehicle in the first degree; and determinate terms of

imprisonment of one year each on the count of unauthorized use of a vehicle in the third degree

and on the two counts of auto stripping in the third degree. Id. at 9 - 15. The Court also issued

sixteen orders of restitution, totaling over $250,000. Id. at 16 - 18.

On May 27, 2005, Petitioner served his notice of appeal, through counsel, on

Respondents. Resp't's Aff. in Opp'n 13. On July 14, 2005, the New York Supreme Court,

Appellate Division, Second Judicial Department, granted the People's motion to dismiss the

appeal on the ground that Petitioner, who was then still at large, was "not amenable to the jurisdiction of this court" because he had absconded.[4]  See Resp't's Mem. Ex. 10 (citing People v. Genet, 59 N.Y. 80 (1874)).

On August 25, 2005, Petitioner was arrested in Georgia, and his sentence was executed on August 29, 2005.  Resp't's Aff. in Opp'n 14.

By motion dated August 29, 2006, Petitioner moved, through counsel, to reinstate his appeal and for the court to accept his proposed appellate brief for filing.  Resp't's Mem. Exs. 13, 14.  The Appellate Division summarily denied the motion to reinstate the appeal on September 25, 2006.[5]  Resp't's Mem. Ex. 16.  Although Petitioner sought leave to appeal this decision to the New York Court of Appeals, that Court dismissed his application on November 15, 2006, as "the order sought to be appealed is not appealable under Criminal Procedure Law, section 450.90(1)." Resp't's Mem. Ex. 18.

On July 16, 2007, Petitioner moved, through counsel, to vacate his conviction or, in the alternative, to set aside his sentence, pursuant to New York Criminal Procedure Law §§ 440.10, 440.20.  Resp't's Mem. Ex. 21.  On November 15, 2007, Judge Zambelli denied the motion.

---

[4]This phrase represents the New York State law analogue to the federal "fugitive disentitlement doctrine," a doctrine which permits appellate courts to dismiss direct appeals of appellants who are fugitives during the pendency of their appeals.  See United States v. Adawalla, 357 F.3d 243, 245 - 46 (2d Cir. 2004).  The doctrine is intended to ensure that an adverse judgment against the appellant may be enforced, to provide a sanction for absconding appellants, to deter absconders, and to avoid prejudice to the opposing party.  Id. at 245.

[5]Although the Appellate Division did not separately address Petitioner's request to have his proposed appellate brief accepted for filing in its order denying reinstatement of his direct appeal, it appears that Petitioner's proposed appellate brief, Resp't's Mem. Ex. 14, was rejected for filing.  In Petitioner's letter application to the Court of Appeals, he states, through counsel, that the proposed brief was returned to him prior to the Appellate Division's decision with a "Papers Rejection Notice."  Resp't's Mem. Ex. 17 at 1.  Respondent also affirms that Petitioner's proposed appellate brief was never properly filed.  Resp't's Aff. in Opp'n at 15 n. 10.

Resp't's Mem. Ex. 24.  On December 24, 2007, Petitioner sought leave to appeal that denial to the Appellate Division, which summarily denied leave on February 14, 2008.  Resp't's Mem. Exs. 25, 27.

C.     Federal Court Proceedings

On March 22, 2008, Petitioner filed the instant habeas petition by delivering it to prison authorities for mailing on that date.  Pet. 11; see Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001)(habeas petition by pro se petitioner is considered filed on the date it is given to prison authorities for mailing).  Petitioner asserts four grounds for habeas relief: first, that his guilty plea was not knowingly, voluntarily, or intelligently made because his attorney failed to explain that a term of post-release supervision would be imposed as a result of his plea, Pet. 4;[6] second, that his plea was not knowingly, voluntarily, or intelligently made because the trial court failed to advise him that he might be sentenced to three consecutive fifteen year terms of imprisonment for the burglary counts, Pet. 5; third, that he "was deprived of his fundamental right to be present when he was sentenced in absentia," Pet. 6; and fourth, that the imposition of consecutive terms of imprisonment on the burglary counts, totaling forty-five years, constituted cruel and unusual punishment, Pet. 7.

Petitioner also argues that his Petition is timely filed because the state courts conducted no direct review of his petition, so the AEDPA limitations period never commenced.  Pet. 9. Petitioner contends that the Appellate Division's dismissal of his direct appeal does not constitute direct review because the appellate court based its decision solely on Petitioner's

_____

[6]In the Memorandum of Law accompanying his Petition, Petitioner also asserts that his plea was not knowing or voluntary because at the time of his plea, the trial court failed to inform Petitioner of the amount of restitution that he would be required to make.  Pet'r's Mem. 22 - 23.

fugitive status, and not on the merits of Petitioner's claims.  Pet. 10.  In the alternative, Petitioner argues that he is entitled to equitable tolling of the one-year AEDPA limitations period because the counsel he retained to pursue his federal habeas petition, as well as other collateral attacks, provided him with ineffective legal assistance.  Pet. 10 - 11.  Among other errors, Petitioner asserts that in 2005, his attorney advised him that the limitations period did not apply in his case because the state had conducted no direct review of his conviction, but then, in February 2008, after the AEDPA deadline had passed, counsel reversed his position and informed Petitioner that he was uncertain how to calculate the statute of limitations in Petitioner's case.  Pet. 10 - 11, Pet'r's Mem. of Law 8 - 16, D.E. 2.

Respondent answered the petition on July 21, 2008.  See Resp't's Aff. in Opp'n, Resp't's Mem.  Respondent argues that the instant Petition should be dismissed as untimely.  Resp't's Mem. 3 - 9.  In the alternative, Respondent contends that Petitioner's claims are unexhausted, meritless, and should be dismissed because of Petitioner's former fugitive status.  Id. at 10 - 24.  Petitioner filed a reply on July 28, 2008.  Pet'r's Reply, D.E. 11.

On February 19, 2009, I denied Petitioner's motion for the appointment of counsel without prejudice.  See Decision and Order, D.E. 14.

## II.  DISCUSSION

A.    Timeliness

Under 28 U.S.C. § 2244(d)(1)(A), a habeas petitioner must file his or her petition within one year of the date on which his or her state court conviction became final.  A state court conviction becomes final "at the conclusion of direct review" or at "the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  In this Circuit, "direct review," as it is used in § 2244(d)(1)(A), includes the opportunity to seek a writ of certiorari from the United States

8

Supreme Court.  See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).

In general, the expiration of a habeas petitioner's time to seek direct review is governed

by state rules of appellate procedure and the Supreme Court's rules governing petitions for

certiorari.  Thus, the conviction of a habeas petitioner who fails to appeal the judgment against

him or her to the Appellate Division becomes final thirty days from the imposition of sentence,

the point at which, under New York Criminal Procedure Law § 460.10(1)(a), his or her time to

initiate a direct appeal expires.[7]  See Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002)(citing

N.Y. Crim. Proc. § 460.10(1)).  If a habeas petitioner appeals his or her conviction to the

intermediate state appellate court, but does not then seek leave to appeal an adverse decision by

that court to the New York State Court of Appeals, his or her conviction becomes final thirty

days from the Appellate Division's decision under New York Criminal Procedure Law §

460.10(5).  See M.P. v. Perlman, 269 F.Supp.2d 36, 38 (E.D.N.Y. 2003).  If a petitioner does

apply for leave to appeal to the Court of Appeals but is denied leave, and does not then seek a

writ of certiorari from the United States Supreme Court, his or her conviction becomes final

ninety days after the decision of the Court of Appeals denying leave to appeal, at the expiration

of the time to seek Supreme Court review under Supreme Court Rule 13.[8]  See Gutierrez v.

---

[7]Under New York State law, if a defendant absconds and is sentenced in absentia, the
date of the "imposition of sentence," for purposes of § 460.10(1)(a), is the date on which the
defendant is sentenced in absentia, not the eventual date on which the sentence is executed.  See
People v. Pabon, 175 A.D.2d 270, 271 (2d Dep't.1991); People v. Colon, 66 Misc.2d 956, 962
(Sup. Ct. Crim. Term 1971); see also People v. Harris, 79 N.Y.2d 909, 910 (1992)("imposition
of sentence," for purposes of right to counsel, occurs when defendant is sentenced in absentia,
not when sentence is eventually executed).

[8]Supreme Court Rule 13 states: "Unless otherwise provided by law, a petition for a writ
of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last
resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the
judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court

Smith, 702 F.3d 103, 108 n. 2 (2d Cir. 2012).

Here, Petitioner, through his attorney, timely filed a notice of direct appeal. This appeal was dismissed by the Appellate Division on July 14, 2005, because Petitioner was then still at large. Petitioner did not seek leave to appeal the Appellate Division's decision dismissing his appeal. Although the unusual procedural posture of Petitioner's direct appeal makes the date on which his conviction became final unclear, Petitioner's optimistic contention that the AEDPA limitations period never began at all, rendering his Petition timely, is incorrect. Instead, his Petition became final on one of several possible dates, and his Petition is untimely if the limitations period is measured from any of them, unless equitable tolling applies.

The latest possible date on which his conviction could have become final arises if the Appellate Division's order dismissing his appeal on fugitive disentitlement grounds is nonappealable. If Petitioner could not have sought leave to appeal the Appellate Division's decision to the Court of Appeals, then the Appellate Division was the "state court of last resort" for purposes of Supreme Court Rule 13.1. At least one court in this Circuit has held that in this situation, Petitioner could have sought a writ of certiorari from the Appellate Division's dismissal, and so the date on which Petitioner's conviction became final would include the ninety day period in which to seek Supreme Court review. See Cedeno v. Conway, 724 F.Supp.2d 373, 378 (W.D.N.Y. 2010) (AEDPA limitations period began ninety days after Appellate

---

that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." Courts in this Circuit have interpreted this Rule to mean that a petitioner whose conviction is affirmed by the Appellate Division, and who does not then seek discretionary review from the Court of Appeals, may not seek a writ of certiorari from the Supreme Court. Those petitioners, therefore, are not entitled to an additional ninety days before their convictions become final. See Smalls v. Smith, No. 05–CV–5182 (CS), 2009 WL 2902516, at *5 n. 5 (S.D.N.Y. Sept. 10, 2009); Perlman, 269 F.Supp.2d at 38 (citing Sup.Ct.R. 13).

Division's dismissal of fugitive's direct appeal for failure to prosecute and on disentitlement grounds, as that dismissal was not appealable to the Court of Appeals); see also Smalls v. Smith, No. 05 Civ. 5182(CLB), 2006 WL 3478983, at *2 (S.D.N.Y. November 28, 2006)(AEDPA limitations period began ninety days after Appellate Division's dismissal of fugitive's appeal). Thus, if the Appellate Division's dismissal was a nonappealable order, Petitioner's conviction became final at the expiration of time to seek a writ of certiorari from the Supreme Court to challenge that order, ninety days after the Appellate Division's July 14, 2005 order of dismissal, or on October 12, 2005. Petitioner would have had one year from that date, or until October 12, 2006, barring any tolling, to file his federal habeas petition.

As Petitioner filed his Petition on March 22, 2008, well after his 2006 deadline, his Petition could only be timely if the limitations period had been tolled. 28 U.S.C. § 2244(d)(2). The only post-conviction motion which could conceivably toll this limitations period is Petitioner's August 29, 2006, motion to reinstate his appeal. Petitioner's motion to reinstate his appeal was summarily denied by the Appellate Division on September 25, 2006. Resp't's Mem. Ex. 16. This motion, however, likely does not qualify as a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" which could toll the limitations period under 28 U.S.C. § 2244(d)(2). See Adeline v. Stinson, 206 F.3d 249, 252 - 53 (2d Cir. 2000)(habeas petitioners may not "create their own methods of seeking post-conviction relief by availing themselves of a state court's general motion practice," such as by repeatedly filing motions to reinstate denied applications for leave to appeal); cf. Jiminez v. Quarterman, 555 U.S. 113, 120 (2009)(where intermediate state appellate court granted motion to reinstate otherwise untimely direct appeal, petitioner's conviction was no longer final for AEDPA purposes). However, even if this motion to reinstate Petitioner's appeal could toll the

11

AEDPA limitations period, it was pending for too short a time to render the Petition timely filed.

Moreover, most district courts in this Circuit to have considered the issue of when a former fugitive's conviction becomes final have used a less generous method of calculating that date. These courts implicitly assume that a dismissal of a direct appeal by the Appellate Division on the basis of the fugitive disentitlement doctrine is an appealable order, so could be the subject of an application for leave to appeal to the Court of Appeals. Under this assumption, the conviction of a habeas petitioner whose appeal was dismissed on that ground would become final thirty days after the Appellate Division's dismissal, at the expiration of time to seek leave to appeal to the Court of Appeals. See Smalls v. Smith, No. 05–CV–5182 (CS), 2009 WL 2902516, at *5 (S.D.N.Y. Sept. 10, 2009) (denying motion to vacate prior dismissal of petition, and determining that former fugitive petitioner's conviction became final thirty days from the intermediate appellate court's dismissal of his direct appeal); Perez v. Haynes, No. 10 CV 713(MKB), 2012 WL 4738997, at *3 (E.D.N.Y. Oct. 3, 2012) (Appellate Division dismissed appeal as abandoned when petitioner absconded after notice of appeal was filed; habeas court held that conviction became final thirty days after order dismissing appeal without prejudice); Rodney v. Breslin, No. 07-CV-4519 (SLT)(RML), 2008 WL 2331455, at *2 (E.D.N.Y. June 3, 2008) (petitioner's appeal was dismissed as abandoned, although petitioner was not a fugitive, because appellate counsel neglected to timely perfect appeal; habeas court held that conviction became final thirty days after order of dismissal of appeal).[9]

Thus, under this method of calculation, Petitioner's conviction became final thirty days

_____

[9]In the spirit of Local Civil Rule 7.2, and mindful of this Circuit's guidance in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), the Court has provided copies of unpublished decisions cited in this Report and Recommendation to Petitioner.

after the Appellate Division's order dismissing his notice of appeal under the fugitive

disentitlement doctrine, or on August 15, 2005.  Petitioner therefore had until August 15, 2006,

to timely file a federal habeas petition.  As both his motion to reinstate his appeal and his motion

to vacate were filed after this date, they could not have tolled this limitations period, even

assuming, as discussed above, that a motion to reinstate an appeal could ever do so.  The Petition

was filed in 2008, so under this method of calculation, the instant Petition was filed well after

one year from the date on which his conviction became final.

      Nonetheless, Petitioner argues that his petition is timely because the Appellate Division

dismissed his direct appeal on procedural grounds, and never considered the substance of his

claims.  Therefore, his claims never received "direct review," so AEDPA's statute of limitations

never began to run.   Pet. 9 - 10; Pet'r's Mem. 1 - 7.  If the one year period never began,

Petitioner contends, it never ended, so the Petition is timely filed.  However, Petitioner's

argument fails because his contention that only direct review of the merits of his claims would

have triggered the limitations period is incorrect.  On its face, AEDPA contains no requirement

that state courts must rule on the merits of a petitioner's appeal in order for the one year

limitations period to commence, and Petitioner cites no case law to the contrary.  See 28 U.S.C.

§ 2244(d)(2).  Nor have courts in this Circuit adopted such a construction when presented with

habeas petitions of former fugitives whose state court appeals were dismissed, as Petitioner's

was, on this procedural ground.  See, e.g., Rodney, 2008 WL 2331455.

      Thus, I conclude, and respectfully request that Your Honor should conclude, that the

instant Petition is untimely, unless equitable tolling applies.

B.     <u>Equitable Tolling</u>

      Because AEDPA's one-year limitations period is a statute of limitations, not a

jurisdictional bar, a court may toll the deadline for an otherwise time-barred petition if the petitioner can establish that extraordinary circumstances prevented timely filing, and that he or she has acted with "reasonable diligence throughout the period he seeks to toll." See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Holland v. Florida, __ U.S. __, 130 S.Ct. 2549, 2562 (2010).

Where the extraordinary circumstance asserted by a habeas petitioner is attorney error, "garden-variety . . . excusable neglect" will not suffice. Irwin v. Dep't of Veterans Affairs et al., 498 U.S. 89, 96 (1990) (attorney's failure to timely file employment discrimination complaint because he was away from his office when he received the EEOC's notice of right to sue did not justify equitable tolling). "Attorney miscalculation is simply not sufficient to warrant equitable tolling" of the AEDPA deadline. Lawrence v. Florida, 549 U.S. 327, 336 (2007)(petitioner's attorney's belief, contrary to the holding of every Court of Appeals to have considered the issue, that petitioner's deadline was statutorily tolled while he sought a writ of certiorari from the Supreme Court on a state collateral attack did not justify equitable tolling).

However, this Circuit has recognized that, in some instances, attorney error can rise to the level of an extraordinary circumstances preventing timely filing. In Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003), the Circuit found that an attorney's failure to file a habeas petition, despite specific instructions from the petitioner to do so, constituted an extraordinary circumstance justifying equitable tolling. See id. at 150 - 153. More recently, in Dillon v. Conway, 642 F.3d 358 (2d Cir. 2011), the Circuit held that equitable tolling was warranted where the petitioner's attorney filed his petition one day late because he mistakenly believed his client was entitled to the extra day under Second Circuit law. Id. at 360 - 61. The Circuit found this attorney error to be "extraordinary" in part because the petitioner had specifically requested

14

that his attorney not wait until the final day to file his petition, and his attorney had promised not to do so. Id. at 364. Because his attorney did not merely miss a deadline, but essentially misled the petitioner about when he would file the petition, and the petitioner was otherwise reasonably diligent, the Circuit found equitable tolling to be merited. Id.

The Supreme Court has also indicated that attorney error in some instances may entitle a petitioner to equitable tolling. In Holland, the Supreme Court noted, in dicta, that the actions of the petitioner's attorney might well justify equitable tolling because his attorney had committed a variety of serious errors beyond mere miscalculation of a deadline. See 130 S.Ct. at 1564. Holland's counsel had failed to timely file his petition despite the petitioner's many letters requesting that he do so, perform legal research to identify the deadline, inform the petitioner of a state court decision in his case which affected his deadline even though the petitioner specifically requested that information, or communicate with his client. Id.

In addition to demonstrating attorney error so egregious that it constitutes an "extraordinary circumstance" preventing timely filing, in order to merit equitable tolling, a petitioner must have exercised reasonable diligence in attempting to timely file his petition. Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004). Factors courts are to consider in determining reasonable diligence where the asserted extraordinary circumstance is attorney error include "the purpose for which the petitioner retained the lawyer, his [or her] ability to evaluate the lawyer's performance, his [or her] financial and logistical ability to consult other lawyers or obtain new representation, and his [or her] ability to comprehend legal materials and file the petition on his own." Id.

Petitioner here argues that he is entitled to equitable tolling because the attorney who represented him on various post-conviction motions mistakenly informed him that the AEDPA

deadline simply did not apply to his habeas petition.  Pet. 10.  Petitioner asserts that at his initial December 2005 meeting with his attorney, Petitioner and his attorney discussed pursuing all possible forms of post-conviction relief, including federal habeas review.  Pet'r's Mem. 9.  When Petitioner asked his attorney what the filing deadlines were for the forms of post-conviction relief they discussed, his attorney stated that his habeas petition could be filed at any time. Petitioner affirms that he asked his attorney to not miss filing deadlines because, since his direct appeal had been dismissed, he needed to seek federal review.  See Pet. 48.  According to counsel, because the Appellate Division's dismissal of his direct appeal did not constitute "direct review" for AEDPA purposes, the limitations period simply did not apply to Petitioner.  Pet'r's Mem. 10.  Counsel informed Petitioner that federal litigation was his specialty, and reassured Petitioner that he knew what he was doing when Petitioner asked him in September 2006 about filing a habeas petition.  See Pet. 49.  Petitioner's attorney apparently continued to hold this view until after the deadline had expired; Petitioner asserts that his attorney wrote him a letter in December 2006 in which counsel indicated that filing a habeas petition was still a possible option.  Pet'r's Mem. 10 - 11.  It was not until February 2008, shortly after the Appellate Division denied leave to appeal the denial of Petitioner's §440 motion, that counsel informed Petitioner that he was unsure of how to calculate the AEDPA deadline, not that it simply did not apply in Petitioner's case.  Pet'r's Mem. 12.

Petitioner asserts that he has acted with reasonable diligence because he filed the instant petition shortly after he became aware of his attorney's miscalculation.  The instant Petition was filed on March 22, 2008, which supports Petitioner's assertion that he acted swiftly to prepare his petition as soon as his attorney informed him that, in fact, the AEDPA deadline might apply to his petition after all.

Respondent argues that equitable tolling is inappropriate here.  First, Respondent states that Petitioner's affidavit does not provide direct support for Petitioner's assertion that his attorney affirmatively misrepresented the deadline at their initial meeting.[10]  Resp't's Mem. 6. Petitioner affirms that his attorney informed him that "the normal federal habeas corpus deadlines did not apply to petitioner's case because his direct appeal was dismissed," and Respondent construes this statement to be "not incorrect."  See Pet. 48; Resp't's Mem. 6 - 7. Second, Respondent concludes that because Petitioner was in regular contact with his attorney, and at one point had asked his attorney why no habeas petition had yet been filed, Petitioner was "in direct control of his post-judgment litigation," and was therefore responsible for ensuring that his attorney timely filed his Petition.  Resp't's Mem. 7.  Third, Respondent argues that the risk of attorney error is borne by Petitioner and does not justify equitable tolling.  Id. at 8 - 9.  Fourth, Respondent claims that Petitioner's untimely filing was due in part to his decision to abscond, and is therefore not entitled to equitable tolling.  Id. at 9.

I assume, without deciding, that Petitioner is entitled to equitable tolling.  This assumption, however, does not change my recommendation that his petition be denied, as I find that even if Petitioner is entitled to equitable tolling, his claims lack merit or are procedurally barred.  Were I required to decide whether Petitioner was entitled to equitable tolling, I would find it a close question.  The case law cited above makes clear that attorney miscalculation, on its own, is insufficient to justify equitable tolling, but it is less clear what additional factors render attorney error an "extraordinary circumstance."  Petitioner's situation is in some ways factually similar to that of the petitioner in Dillon v. Conway, 642 F.3d 358 (2d Cir. 2011), in which this

---

[10]Neither Petitioner nor Respondent has supplied an affirmation from the attorney.

Circuit found attorney error to justify equitable tolling.  "[S]ignificantly," Dillon expressly

requested that his attorney not wait until the last day to file his petition, and Dillon's attorney

promised not to do so; had Dillon's attorney complied with his promise, Dillon's petition would

have been timely filed.  Dillon, 642 F.3d at 360.  Petitioner here asserts that he asked his

attorney not to miss any filing deadlines because he wanted to preserve his ability to seek federal

habeas relief, Pet. 48, and his attorney reassured him that there was no filing deadline for his

federal habeas petition, Pet'r's Mem. 9.  Thus, here, as in Dillon, Petitioner missed his deadline

because he relied on his attorney's assurance of timely filing, and both Dillon's and Petitioner's

attorneys failed to timely file because they misunderstood the law.   However, Dillon did more

than just request that his petition be timely filed; he repeatedly and expressly instructed his

attorney to file his petition ahead of the deadline, and the Circuit found his attorney's promise to

comply to be "deeply misleading."  Dillon, 642 F.3d at 363.  It is less clear that Petitioner's

attorney intentionally misled him; instead, it appears that his attorney attempted to comply with

Petitioner's request not to miss any deadlines, but made a good-faith miscalculation of the

AEDPA deadline.  Thus, there is no clear measure for whether Petitioner is entitled to equitable

tolling.

      For the reasons that follow, however, even if Petitioner is entitled to equitable tolling, I

conclude, and respectfully recommend that Your Honor should conclude, that his Petition should

still be denied for lack of merit.

C.    The Merits of Petitioner's Claims

    1.    Petitioner's First Claim for Habeas Relief

      Petitioner first claims his guilty plea was not knowing and voluntary because the trial

court allegedly failed to inform him that pleading guilty would subject him to a term of post-

release supervision, and because, at the time of his plea, the trial court did not provide him with the precise amount of restitution his plea would require him to pay. Pet'r's Mem. 21 - 26.

      a.    <u>Exhaustion</u>

Before a federal court may reach the merits of a claim raised in a habeas petition under 28 U.S.C. § 2254, that claim must have first been "fairly presented" to the highest available state court. <u>See</u> <u>Klein v. Harris</u>, 667 F.2d 274, 282 (2d Cir. 1981). A claim is "fairly presented" when the petitioner has "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." <u>Daye v. Attorney General of the State of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982).

Respondent contends that Petitioner has failed to exhaust this claim for a number of reasons. Respondent contends, first, that Petitioner failed to exhaust this claim because it could have been raised on direct appeal, a right which Petitioner forfeited by absconding. Resp't's Mem. 10. Second, Respondent argues that Petitioner should not be entitled to a federal court's review of the merits of his claims when he failed to fairly present them to state court by virtue of his escape. <u>Id.</u> at 12 - 13. Third, Respondent argues that Petitioner's presentation of a similar claim to the state courts in his collateral attack does not suffice to exhaust <u>this</u> claim. <u>Id.</u> at 14.

Petitioner replies that he did, in fact, raise this claim on collateral attack before the state courts. Pet'r's Reply at ¶¶ 26 - 29.

As Respondent notes, the version of this claim raised in Petitioner's § 440 motion is not identical to the claim raised here. In his § 440 motion, Petitioner alleged that the trial court had erred by not explaining to him the conditions of his supervised release, or the consequences of violating those conditions. Resp't's Mem. Ex. 21 at 7 - 10. He did not argue, as he does now, that the trial court had failed to discuss the imposition of post-release supervision at all. <u>See</u> <u>id.</u>

19

I am mindful, though, of my responsibility to construe pro se litigants' submissions liberally, "to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 471 (2d Cir. 2006).  As Petitioner indicates in his Reply that he exhausted this claim in his collateral attack, I conclude that he intended to raise, and has exhausted, the claim that the trial court failed to advise him of the conditions and consequences of supervised release prior to his plea of guilty in the instant Petition.  He raised this claim in his § 440 motion and reiterated in it in his application for leave to appeal to the Appellate Division from the denial of that motion.  Resp't's Mem. Exs. 21, 25.

However, Petitioner has not previously raised any version of his claim that his plea was not knowing or voluntary because, at the time of his plea, he was not advised of the amount of restitution, before any state court.  See Resp't's Mem. Ex. 21.  Petitioner could still raise this claim in state court via a new motion pursuant to N.Y. Crim. Proc. Law § 440.10; as the trial court noted in its denial of Petitioner's collateral attack, challenges to the voluntariness of a plea are properly raised in such a motion.  Resp't's Mem. Ex. 24 at 3.  Moreover, even though Petitioner already filed a § 440 motion, New York State law permits multiple such motions, although a state court reviewing a successive § 440.10 motion may deny it if it contains claims which could have been raised in the earlier motion but were not.  See N.Y. Crim Proc. Law § 440.10(3)(c).  Thus, because Petitioner still has a way to raise the claim that failure to inform him of the amount of restitution prior to his plea rendered his plea unknowing and involuntary in state court, this claim is unexhausted.  See 28 U.S.C. § 2254(c)("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

20

When a petition contains unexhausted and exhausted claims, it is considered a so-called "mixed petition," and a court has discretion to dismiss the petition in its entirety, stay the exhausted claims to permit the petitioner to exhaust the unexhausted claims in state court, or deny the petition on the merits. See Rhines v. Weber, 544 U.S. 269, 277 - 79 (2005); see also 28 U.S.C. § 2254(b)(2). In order to obtain a stay of the exhausted claims, a petitioner must show that his or her unexhausted claims are "potentially meritorious," that he or she had good cause for failing to exhaust those claims before bringing them to federal court, and that he or she has not engaged in "intentionally dilatory litigation tactics." Rhines, 544 U.S. at 278.

Petitioner here has not sought such a stay, nor has he made the requisite showing for one. However, as "dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief," I instead delete this claim from the instant petition. See id. (". . .if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.").

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's first ground for habeas relief should be construed as raising the same arguments previously raised in his § 440 motion, namely, that his plea was not knowing or voluntary because the trial court failed to advise him of the conditions and consequences of his term of supervised release. I further conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's claim that failure to advise him of the amount of restitution rendered his plea invalid is unexhausted and should be denied.

    b.    The Merits

AEDPA enables a state prisoner to challenge his or her state court conviction "only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a). Under AEDPA, a federal court may not grant habeas relief with respect to any claim in a petition filed under 28 U.S.C. § 2254 unless the state court's adjudication of the merits of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law," as defined by the Supreme Court, or which "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(1), (2). Here, the state court which reviewed Petitioner's § 440 motion reached the merits of Petitioner's first claim for relief, construed as previously described, so this deferential standard of review applies to my analysis of this claim. Resp't's Mem. Ex. 24 at 3 - 5.

Petitioner's claim fails because the state court's adjudication of his claim was not contrary to, or an unreasonable application of, Supreme Court precedent. The Supreme Court has held that, for a guilty plea to be voluntarily made, the defendant must be "fully aware of the direct consequences" of the plea. Brady v. United States, 397 U.S. 742, 755 (1970) (quotation omitted). However, the Supreme Court has not established that the imposition of a term of supervised release is a "direct consequence" of which a defendant must be advised prior to his plea. See Pignataro v. Poole, 381 Fed.Appx. 46, 49 (2d Cir. 2010); Redcross v. Keller, No. 06–CV–3882 (KMK)(GAY), 2010 WL 3219320, at *5 (S.D.N.Y. Aug. 12, 2010)(collecting cases); Carter v. Heath, No. 11 Civ. 7663(KBF), 2012 WL 2952892, at *7 (S.D.N.Y. July 18, 2012); Williams v. Conway, No. 07–CV–756(Sr), 2011 WL 5326264, at * 4 (W.D.N.Y. Nov. 4, 2011). Thus, the state courts considering this question in Petitioner's case cannot have mis-applied Supreme Court precedent which does not yet exist. See Pignataro, 381 Fed.Appx. at 50

22

("... in the absence of a Supreme Court ruling on the issue of whether [post-release supervision]... could be a direct consequence of a guilty plea, the trial court's acceptance of Appellant's guilty plea was not contrary to or an unreasonable application of federal law.").

The state and federal case law Petitioner cites in support of his argument to the contrary is inapposite. First, he relies on New York State court decisions which recognize what the Supreme Court has not: a term of supervised release is a direct consequence of pleading guilty and so courts must advise defendants of its imposition. Pet'r's Mem. 22 (citing People v. Catu, 4 N.Y.3d 242, 244 (2005)). These state court decisions, interpreting and applying New York State law, are not relevant to the question of whether the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. Nor is it this Court's role to evaluate the state court's application of state law.

Second, the federal case law Petitioner cites is also not on point. In the cases to which Petitioner refers, federal district courts failed to comply with the Federal Rules of Criminal Procedure when they did not advise federal criminal defendants, prior to their pleas of guilty, that a period of supervised release or restitution would be imposed. Pet'r's Mem. 23 - 26 (citing United States v. Roberts, 5 F.3d 365 (9th Cir. 1993)(vacating petitioner's sentence because district court's failure to advise him that he would be subject to a period of supervised release violated Fed.R.Crim.P. 11); United States v. Gonzalez, 820 F.2d 575 (2d Cir. 1987) (applying Fed.R.Crim.P. 11); United States v. Showerman, 68 F.3d 1524 (2d Cir. 1995)(vacating appellant's judgment because district court failed to advise him that his sentence would include restitution, in violation of Fed.R.Crim.P. 11). The state court which accepted Petitioner's plea was not bound by the more stringent requirements of the Federal Rules of Criminal Procedure. Thus, these cases do not affect my conclusion that the state court's denial of this claim was not

23

contrary to, or an unreasonable application of, clearly established federal law.

I therefore conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's first claim for habeas relief should be denied.

2.    <u>Petitioner's Second Claim for Habeas Relief</u>

Next, Petitioner claims that his plea of guilty was not knowing or voluntary because the trial court did not advise him that the fifteen-year sentences imposed on each of his three burglary counts might run consecutively.  Pet'r's Mem. 26.

a.    <u>Exhaustion</u>

Petitioner exhausted this claim by raising it in his collateral attack on his conviction and sentence before the trial court, and again in his application for leave to appeal the denial of that motion to the Appellate Division.  Resp't's Mem. Ex. 21 at 10 - 12, Ex. 25.

b.    <u>The Merits</u>

As the state court adjudicated this claim on the merits, <u>see</u> Resp't's Mem. Ex. 24 at 5 - 6, AEDPA's deferential standard of review applies.  Petitioner can only succeed on this claim if the state court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

As noted above, the Supreme Court has held that, for a guilty plea to be knowing and voluntary, the trial court must advise the defendant of the "direct consequences" of the plea. <u>Brady</u>, 397 U.S. at 755.  Although the Supreme Court has not defined which consequences of a plea of guilty are "direct," this Circuit has held that a "direct" consequence is one which is "definite, immediate, and largely automatic."  <u>See</u> <u>United States v. Salerno</u>, 66 F.3d 544, 551 (2d Cir. 1995)(internal quotations omitted).  In <u>Wilson v. McGinnis</u>, 413 F.3d 196 (2d Cir. 2005), this Circuit held that a state court's imposition of consecutive sentences is not a "definite,

immediate, and largely automatic" consequence of a habeas petitioner's guilty plea, so even though the state court failed to inform the petitioner that his sentences could run consecutively, his plea was still knowing and voluntary.[11] Id. at 200.

Under Wilson, then, even if the trial court had failed to mention the possibility that Petitioner's terms of imprisonment for burglary could run consecutively, that omission would not justify habeas relief.  However, as the state court noted in denying this claim, the trial court did advise Petitioner that he could face consecutive sentences, albeit not expressly.  Resp't's Mem. Ex. 24 at 5.  During Petitioner's plea colloquy, the Court asked Petitioner if he understood that "the top charge you're pleading to is a class C violent felony for which the maximum sentence is 15 years in State prison on each of the counts of that crime."  Resp't's Mem. Ex. 7 at 24: 4 - 9 (emphasis added).  Petitioner responded in the affirmative.  Id. at 24: 10.  The Court also informed Petitioner that if he failed to return to court, "I will hold you to your plea and I will sentence you to the maximum the law [allows] me to sentence you to."  Id. at 27: 5 - 12.

Therefore, Petitioner's claim is meritless because the trial court did provide him with some notice of the possibility that, should he abscond, his sentences would run consecutively.  Moreover, even if, as Petitioner contends, the trial court provided him with insufficient notice of this possibility, this Circuit's precedent holds that the trial court had no obligation to inform him of this possibility.  In either case, the state court did not unreasonably apply clearly established federal law.  Thus, I conclude, and respectfully recommend that Your Honor should conclude, that this claim is meritless and should be denied.

---

[11]In Wilson, the Circuit noted that its interpretation of "direct consequences" was not binding on state courts, but could still guide the Circuit's determination of whether the state court had unreasonably applied the rule that a plea must be knowing and voluntary.  413 F.3d at 199 - 200.

3.    Petitioner's Third Claim for Habeas Relief

Third, Petitioner alleges that he was "deprived of his fundamental right to be present when he was sentenced in absentia." Pet'r's Mem. 32. Petitioner argues that "the sentencing court's conclusion that the defendant had voluntarily absented himself was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" pursuant to 28 U.S.C. § 2254(d)(2). Id. at 33.

a.    Exhaustion

Petitioner raised this issue in his § 440 motion. Resp't's Mem. Ex. 21 at 12 - 16. The state court denied this claim on the merits. Resp't's Mem. Ex. 24 at 7 - 8. He reiterated this claim in his application for leave to appeal to the Appellate Division. Resp't's Mem. Ex. 25.

b.    The Merits

Under 28 U.S.C. § 2254(d)(2), "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A criminal defendant has a constitutional right to be present at his or her sentencing. See United States v. Salim, 690 F.3d 115, 122 (2d Cir. 2012). However, a defendant may be tried or sentenced in absentia if he or she has waived that right knowingly and voluntarily. See Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999)("all that the Constitution requires is a knowing

and voluntary waiver of the right to be present" at trial before a defendant is tried in absentia).

"A defendant who deliberately fails to appear in court does so voluntarily." <u>United States v.</u>

<u>Tortora</u>, 464 F.2d 1202, 1208 (2d Cir. 1972).  Knowledge may also be inferred from the

defendant's conduct.  <u>See</u> <u>Taylor v. United States</u>, 414 U.S. 17, 20 (1973)(defendant who

absconded during trial waived right to be present at trial, even though trial court had not

specifically advised him that trial would continue in his absence, because it would be

"incredible" for him to think otherwise).

    Petitioner here challenges the sentencing court's decision to sentence him in absentia.

Pet'r's Mem. 32 - 37.  He argues that this decision was based on an unreasonable determination

of the facts presented at sentencing because the prosecutor offered no evidence aside from his

own representations to the Court to corroborate his description of law enforcement efforts to

locate Petitioner.  <u>Id.</u>  This argument is meritless.  The Court's determination that Petitioner had

voluntarily and knowingly absented himself from his sentencing was based on Petitioner's failure

to appear at sentencing, despite having been advised multiple times during the course of his case

of the consequences of failing to appear at court proceedings while out on bail.  The Court heard

the Assistant District Attorney's assertions as to the efforts of law enforcement to secure

Petitioner's attendance, and then asked Petitioner's attorney for his position.  Resp't's Mem. Ex. 8

at 7: 3.  Petitioner's attorney stated that he could not dispute the truth of the prosecutor's

assertions, and presented no facts to indicate that Petitioner's absence was involuntary.  <u>Id.</u> at 7: 4

- 20.  Nor does Petitioner now offer any facts to call into question the trial court's determination

that Petitioner's absence was knowing and voluntary, so the presumption of correctness that

attaches to that court's findings is undisturbed.

    Thus I conclude, and respectfully recommend that Your Honor should conclude, that this

27

claim should be denied.

    4.    <u>Petitioner's Fourth Claim for Habeas Relief</u>

Fourth, Petitioner alleges that the imposition of consecutive sentences for his burglary convictions, totaling forty-five years, violated the Eight Amendment's prohibition on cruel and unusual punishment.  Pet'r's Mem. 37.  He also argues that the imposition of a term of supervised release, in addition to his fifteen-year sentences for burglary, each of which represents the maximum term of imprisonment, effectively increases his sentence beyond the statutory limits. Pet'r's Mem. 43 (citing <u>United States v. Roberts</u>, 5 F.3d 365 (9th Cir. 1993)).  Petitioner argues that this period of supervised release means his term of imprisonment is not within the statutorily prescribed range, so therefore may constitute cruel and unusual punishment.  <u>Id.</u>

    a.    <u>Exhaustion</u>

Petitioner raised the claim that the imposition of consecutive sentences was cruel and unusual punishment in a motion to set aside his sentence under New York Criminal Procedure Law §440.20, which accompanied his § 440.10 motion.  Resp't's Mem. Ex. 21 at 18 - 23.   He reiterated this claim in his application for leave to appeal the denial of that motion to the Appellate Division.  Resp't's Mem. Ex. 25.  Petitioner did not claim that the additional imposition of supervised release rendered his sentence unconstitutional.  <u>See id.</u>  Thus, to the extent that Petitioner now alleges that the imposition of supervised release renders his sentence unconstitutional, any such claim is unexhausted, as he could still conceivably raise this claim in another §440.20 motion.  As noted <u>supra</u>, a court confronted with a mixed petition may stay the exhausted claims to permit exhaustion of the unexhausted claims, may dismiss the petition in its entirety, or may delete the unexhausted claims and consider the remainder of the petition on the

merits.  As previously discussed, Petitioner has not established that he is entitled to a stay, nor do I conclude that dismissal of his entire Petition is appropriate.  Thus, I construe Petitioner's fourth claim for habeas relief to be the claim raised in Petitioner's §440.20 motion, as an Eighth Amendment challenge to the imposition of consecutive sentences, and delete the unexhausted reference to supervised release.

>    b.    The Merits

As Petitioner recognizes, this Circuit has held that "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381 (2d Cir. 1992).  The state court's denial of this claim on the grounds that the sentence was within the limits prescribed by statute was correct.  Resp't's Mem. Ex. 24 at 8; see N.Y. Penal Law § 140.25 ("Burglary in the second degree is a class C felony"), and N.Y. Penal Law § 60.05(4)("every person convicted of a class C violent felony offense . . . must be sentenced to imprisonment in accordance with section 70.02"); and N.Y. Penal Law § 70.02(1)(b)("Class C violent felony offenses: . . . burglary in the second degree as defined in section 140.25"); and N.Y. Penal Law § 70.02(2)(a)([effective language until Sept. 1, 2009] "the sentence imposed upon a person convicted of a class C violent felony offense must be a determinate sentence of imprisonment which shall be in whole or half years.  The term of such sentence must be in accordance with the provisions of subdivision three of this section."); and N.Y. Penal Law § 70.02(3)("The term of a determinate sentence for a violent felony offense must be fixed by the court as follows: . . . (b) For a class C felony, the term must be at least three and one-half years and must not exceed fifteen years . . . "); N.Y. Penal Law § 70.25 (sentences for separate and distinct crimes may be ordered to run consecutively).  Therefore, this claim presents no federal constitutional issue.  Thus, I conclude, and respectfully request that Your

29

Honor should conclude, that this claim should be denied.

### III.  CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the instant Petition should be dismissed in its entirety.  As the Petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

### IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Deborah Batts at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Batts and should

not be made to the undersigned.

Dated: February 28 2013
      White Plains, New York

                              Respectfully submitted,

                              Lisa Margaret Smith
                              United States Magistrate Judge
                              Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Deborah A. Batts, U.S.D.J.

Robert Lue
05-A-4743
Sing Sing C.F.
354 Hunter Street
Ossining, NY 10562

John James Sergi
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601

31